## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DOLORES GEORGIAN NANCE, *et al.*,

                Plaintiffs,

*v.*

GUIDANT CORPORATION, *et al.*,

and

**ROBERT C. BUCHER, JR.,**
**Serve:**  8900 Southview Lane
           St. Louis, MO 63123

                Defendants.

Case No.:  4:08CV1798 CDP

### FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH

Plaintiffs Dolores Georgian Nance, deceased, by and through Sherry Lane, as Independent Administrator of the Estate of Dolores G. Nance, deceased, and Sherry Lane, individually, and James A. Nance, individually, and Karen A. Mercer, individually, state for their causes of action against Defendants as follows:

#### PARTIES

1.    Plaintiff Dolores Georgian Nance (hereinafter "Dolores") is deceased.

2.    Plaintiff Sherry Lane is the daughter of Dolores and resides at 10901 Emerald Mound Grange Road, Lebanon, Illinois 62254, and is entitled to bring an action for the wrongful death of her mother.

3.    Plaintiff James A. Nance is the husband of Dolores and resides at 10901 Emerald Mound Grange Road, Lebanon, Illinois 62254 and is entitled to bring an action for the wrongful death of his wife.

# EXHIBIT A

4.     Plaintiff Karen A. Mercer is the daughter of Dolores and resides at 405 Sycamore, Collinsville, Illinois 62234 and is entitled to bring an action for the wrongful death of her mother.

5.     Defendant Guidant Corporation (hereinafter "Guidant") is and was a foreign corporation existing under the laws of the state of Indiana, with its principal place of business in Indianapolis, Indiana, doing business in numerous states, including, but not limited to, the State of Missouri, City of St. Louis.  At all times herein mentioned, Guidant designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain medical device referred to as the Insignia™ 1 Plus DR pacemaker (hereinafter "Insignia™ pacemaker").

6.     Defendant Guidant Sales Corporation (hereinafter "Guidant Sales") is and was a foreign corporation and a wholly owned subsidiary of Guidant and has its principal place of business in St. Paul, Minnesota.  Guidant Sales is authorized to conduct business within the State of Missouri, and markets, distributes and sells products, including the Insignia™ pacemaker, in the State of Missouri.

7.     Defendant Boston Scientific Corporation (hereinafter "Boston Scientific") is a foreign corporation existing under the laws of the state of Massachusetts, with its principal place of business in Natick, Massachusetts, doing business in numerous states, including, but not limited to, the State of Missouri.  Upon information and belief, in April 2006, Boston Scientific purchased Guidant Corporation and its liabilities.

8.     Defendant Robert C. Bucher, Jr. (hereinafter "Bucher") is an individual who resides at 8900 Southview Lane, Saint Louis, Saint Louis County, Missouri 63123.  Upon information and belief, Bucher individually or as a corporation, partnership or other legal entity

supplied medical products on behalf of Guidant and Guidant Sales within the State of Missouri, including acting as and/or employing sales representatives who sold the Insignia™ pacemaker in the State of Missouri.  At all times mentioned herein, Bucher was an employee and/or agent of Guidant and was acting within the scope and course of his employment and/or agency, making Guidant liable for Bucher's conduct under the doctrine of *respondeat superior*.

### VENUE AND JURISDICTION

9.      Venue is proper in this Court pursuant to RSMo. § 508.010 (2005).

### FACTUAL BACKGROUND

10.      Prior to August 2004, Dolores submitted to examination, diagnosis and treatment by Dr. Preben Bjerregaard, M.D. ("Bjerregaard") for medical treatment regarding her heart.

11.      On or about August 6, 2004, the medical treatment for Dolores resulted in surgical implantation of an Insignia™ pacemaker by Dr. Lisa Schiller, M.D. ("Schiller") at Saint Louis University Hospital ("SLU Hospital") in St. Louis, Missouri.

12.      In preparation for the surgery, either Bjerregaard or Schiller, or someone at their direction, contacted Guidant and/or Guidant Sales and/or Bucher to notify it of a need for a pacemaker.

13.      Defendants Bucher, Guidant and/or Guidant Sales, through their employee or agent, provided the Insignia™ pacemaker, manufactured by Guidant, and delivered the pacemaker to the operating room at SLU Hospital on or about August 6, 2004, where Dolores was being treated.

14.      On August 6, 2004, Dolores received an Insignia™ pacemaker and its component parts, manufactured by Guidant.

15.      Specifically, Dolores received an Insignia™ 1 Plus DR pacemaker Model No. 1298, Serial No. 181198.

16.     When Bjerregaard and Schiller recommended and installed the Insignia™ pacemaker in Dolores, they, and consequently Dolores, anticipated the Insignia™ pacemaker would operate in its normal and intended use, and would not fail or experience intermittent or permanent loss of pacing output without warning, would not experience intermittent or permanent loss of telemetry, would not revert to VVI mode or appearance of a reset warning message upon interrogation, and would assist Dolores in situations where she had irregular heartbeat or heart failure.

17.     Upon information and belief, on August 6, 2004, the day of implantation, Schiller and/or representatives of Guidant, including Bucher, experienced difficulty in operation of the Insignia™ pacemaker.

18.     On August 7, 2004, the day after implantation, the pacemaker had to be reset by Bucher and/or his representative, because it appeared to be far-field sensing in resulting in modes.

19.     On August 7, 2004, the day after implantation of the Insignia™ pacemaker, Dolores's telemetries revealed rare premature ventricular contractions and non-conducted premature atrial contractions.

20.     Dolores experienced dizziness and "missed heartbeats" within a week after the implantation of the Insignia™ pacemaker.  Thereafter, she experienced progressively increased shortness of breath.  These symptoms continued for several weeks, causing Dolores to be re-admitted at SLU Hospital in St. Louis, Missouri on September 18, 2004.

21.     On September 18, 2004, Dolores's Insignia™ pacemaker was reprogrammed by Bucher and/or his representative.

22.     Thereafter, on or about January 3, 2005, Dolores was admitted to Saint Joseph's Hospital in Breese, Illinois, again complaining of weakness, shortness of breath and dizziness.

4

23.   On August 22, 2005, Dolores was admitted to Saint Joseph's Hospital for complaints of weakness, tired and achiness all over, extreme shortness of breath and fatigue.

24.   On January 10, 2006, Dolores was admitted to Saint Joseph's Hospital with complaints of shortness of breath and wheezing.

25.   On June 10, 2006, Dolores was admitted to Saint Joseph's Hospital with more complaints of lightheadedness, weakness, nausea and shortness of breath.

26.   On June 28, 2006, Dolores was admitted to Saint Joseph's Hospital with complaints of fatigue, nausea and shortness of breath.

27.   On October 14, 2006, Dolores experienced a cardiac arrest and was admitted to Missouri Delta Medical Center in Sikeston, Missouri, where she was found to be in ventricular fibrillation, requiring cardiac shock.

28.   Upon admission to Missouri Delta Medical Center, the physicians determined that the Insignia™ pacemaker had failed and was not capturing heartbeats.

29.   Dolores was revived and brought back into rhythm and placed on a ventilator.

30.   As a result of Dolores's cardiac arrest, Dolores suffered severe anoxic brain injury.

31.   Thereafter, Dolores's treating physician had a lengthy discussion with Dolores's family regarding the degree and severity of Dolores's brain injury and explained that Dolores would have no meaningful chance of recovery.

32.   On October 16, 2006, faced with this information and the probability that Dolores would never recover from her brain injury and would never come out of her coma, it was agreed to remove life support.

33.   On October 16, 2006, Dolores died as a result of a severe anoxic brain injury from cardiac arrest and the failure of her Insignia™ pacemaker.

5

34.     Prior to Dolores's death, Defendants, and each of them, had actual knowledge that the Insignia™ pacemaker had a tendency to fail because of a defect in the product and that such defect presented a health and safety risk to patients.

35.     Defendants, and each of them, knew the defect of the Insignia™ pacemaker had caused injury in other patients.

36.     On September 22, 2005, over a year prior to Dolores's death, Guidant announced the recall of the Insignia™ pacemaker, said recall included the Insignia™ 1 Plus DR pacemaker Model No. 1298, Serial No. 181198 that was implanted in Dolores.

37.     On or about September 22, 2005, Guidant allegedly forwarded a "Dear Doctor" letter to physicians regarding important "Medical Device Safety" information and corrective action pertaining to the Insignia™ 1 Plus DR pacemaker.  A copy of the "Dear Doctor" letter is attached as Exhibit A.

38.     In the "Dear Doctor" letter, Guidant indicated the device may cause intermittent or permanent loss of pacing output without warning; may cause intermittent or permanent loss of telemetry; and may revert to VVI mode or appearance of a reset warning message upon interrogation.

39.     In the "Dear Doctor" letter, Guidant advised physicians to tell their patients to seek medical attention immediately if they experienced syncope or lightheadedness.

40.     On or about October 3, 2005, Guidant allegedly forwarded a "Dear Patient" letter to patients who had received the Insignia™ 1 Plus DR pacemaker warning patients of the possible failure.  Guidant identified incidents in which patients became dizzy, lightheaded or having fainted requiring hospitalization.  A copy of the "Dear Patient" letter is attached as Exhibit B.

41.    In the "Dear Patient" letter, Guidant allegedly informed patients they should seek medical attention immediately if they experience shortness of breath, dizziness or lightheadedness.

42.    On or about December 12, 2005, Guidant forwarded an "Advisory Update" which was an update to the "Dear Doctor" letter.  A copy of the "Advisory Update" is attached as Exhibit C.

43.    In the "Advisory Update", Guidant identified two potential failure modes:  one being caused because a foreign material within the crystal timing component and the other because of a microscopic particle within the crystal timing component.

44.    Guidant provided physicians with a list of patients whose devices were potentially affected by the first failure mode, but did not provide a list of patients potentially affected by the second failure mode.

45.    Upon information and belief, Defendants, and each of them, failed to inform Dolores and her physicians that she had a defective Insignia™ pacemaker implanted in her heart and failed to warn her of the risk associated with the Insignia™ pacemaker.

46.    As a direct and proximate result of the failed Insignia™ pacemaker, Dolores suffered personal injuries, experienced great pain and suffering, required additional medical treatment and hospitalizations and incurred substantial additional medical expenses.

47.    As a direct and proximate result of the failed Insignia™ pacemaker, Dolores suffered cardiac arrest resulting in severe anoxic brain injury and her death.

## COUNT I
### (STRICT LIABILITY DEFECTIVE PRODUCT AGAINST GUIDANT, GUIDANT SALES, BOSTON SCIENTIFIC AND BUCHER)

48.    Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

49.     At the time of the distribution and sale of the aforementioned Insignia™ pacemaker and its components, Defendants had a duty of care and may be held strictly liable for violation thereof.

50.     At the time of the distribution and sale of the aforementioned Insignia™ pacemaker, the aforementioned Insignia™ pacemaker was defective, not merchantable, not reasonably suited for its intended use, and unreasonably dangerous when put to a reasonably anticipated use.

51.     Defendants, as the manufacturer and the distributor of the Insignia™ pacemaker, knew or should have known that unless the device was carefully and properly designed, manufactured, fabricated, assembled, transported, and stored, that it would constitute an unreasonable risk of substantial bodily harm to those who used it for the purposes for which it was made and intended.

52.     At the time and on the occasion in question, the Insignia™ pacemaker was being properly used for the purpose for which it was intended and such device was in fact defective, unsafe, and unreasonably dangerous.

53.     The Defendants sold, supplied, and distributed the Insignia™ pacemaker when they were engaged in the business of selling, distributing, and supplying such devices.  At the time of the selling, distribution, and supplying of the device, it was unsafe and defective in that it was defectively designed and/or manufactured.   As designed, manufactured, fabricated, assembled, transported, and stored, the Insignia™ pacemaker was unreasonably dangerous to anyone who might use it for the purposes for which it was intended and it was, in fact, defective, unfit, dangerous, unsafe, unsuitable, and dangerous to be placed in the Dolores's body.

54.     As a direct and proximate result of the aforementioned, Dolores was caused to suffer personal injuries, experienced great pain and suffering, incurred medical expenses, required additional hospitalizations and ultimately caused the death of Dolores.

55.     As a result of the death of Dolores, Dolores's survivors have lost the services, companionship, comfort, care, love, guidance, counsel, support and have sustained a great pecuniary loss as a direct result of the death of Dolores.

56.     As a direct result of the injuries and death of Dolores, substantial medical expenses, funeral expenses and burial expenses were incurred.

57.     At the time Defendants sold the Insignia™ pacemaker and each of its component parts, Defendants conducted an improper act by concealing from Dolores and the public that Defendants knew of the defective condition and danger of the Insignia™ pacemaker.

58.     At the time Defendants sold the Insignia™ pacemaker and each of its component parts, Defendants knew of the defective condition and danger of Insignia™ pacemaker.  By allowing these actions, Defendants showed a complete indifference or conscious disregard for the safety of Dolores and others and Defendants should be made to pay an additional amount as exemplary or punitive damages in an effort to punish Defendants and to deter Defendants and others from like conduct.

59.     Upon information and belief, Boston Scientific purchased Guidant and Guidant Sales, and is responsible for the liabilities of Guidant and/or Guidant Sales.

WHEREFORE, Plaintiffs pray for judgment against Defendants Guidant, Guidant Sales, Boston Scientific and Bucher for an award of such sums that will justly compensate Plaintiffs for the damages they sustained and will sustain in the future as a direct result of Dolores's death, including damages for aggravating circumstances and/or punitive damages, for the costs and expense of this action, and for such other and further relief as the Court deems just and proper.

## COUNT II
### (STRICT PRODUCT LIABILITY FAILURE TO WARN AGAINST GUIDANT, GUIDANT SALES, BOSTON SCIENTIFIC AND BUCHER)

60.     Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

61.     The Insignia™ pacemaker manufactured and/or supplied by Defendants was sold in the regular course of Defendants' business.

62.     The Insignia™ pacemaker was then unreasonably dangerous and defective when put to a reasonably anticipated use due to inadequate post-marketing warning or instruction because, after the manufacturer knew or should have known of the risk of injury from the Insignia™ pacemaker, it failed to provide adequate warnings to users or consumers of the product, including adequate warnings to physicians, and continued to aggressively promote the product.

63.     Defendants failed to give adequate warning of the danger, including failing to warn of adverse consequences, adverse symptoms and possibly death.

64.     As a direct and proximate result of the aforementioned, Dolores was caused to suffer personal injuries, experienced great pain and suffering, incurred medical expenses, required additional hospitalizations and ultimately caused the death of Dolores.

65.     As a result of the death of Dolores, Dolores's survivors have lost the services, companionship, comfort, care, love, guidance, counsel, support and have sustained a great pecuniary loss as a direct result of the death of Dolores.

66.     As a direct result of the injuries and death of Dolores, substantial medical expenses, funeral expenses and burial expenses were incurred.

67.      Upon information and belief, Boston Scientific purchased Guidant and Guidant Sales, and is responsible for the liabilities of Guidant and/or Guidant Sales.

WHEREFORE, Plaintiffs pray for judgment against Defendants Guidant, Guidant Sales, Boston Scientific and Bucher for an award of such sums that will justly compensate Plaintiffs for the damages they sustained and will sustain in the future as a direct result of Dolores's death, including damages for aggravating circumstances and/or punitive damages, for the costs and expense of this action, and for such other and further relief as the Court deems just and proper.

**COUNT III**
**(NEGLIGENT DESIGN, MANUFACTURE OR SALE AGAINST GUIDANT, GUIDANT SALES, BOSTON SCIENTIFIC AND BUCHER)**

68.     Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

69.     Defendants Guidant, Guidant Sales and Bucher, in designing, manufacturing, fabricating, supplying and selling the aforementioned Insignia™ pacemaker and its components were negligent in the following respects:

a.     Designing, manufacturing and selling the Insignia™ pacemaker that was subject to failure over time;

b.     Designing, manufacturing and selling the Insignia™ pacemaker that has intermittent or permanent loss of pacing output without warning;

c.     Designing, manufacturing and selling the Insignia™ pacemaker that experiences intermittent or permanent loss of telemetry;

d.     Designing, manufacturing and selling the Insignia™ pacemaker that had tendencies to revert to VVI mode or appearance of a reset warning message upon interrogation;

e.     Designing, manufacturing and selling the Insignia™ pacemaker that contained a crystal timing component that allowed certain conditions to

cause a particle to move and interfere with the crystal timing component and effected or stopped the Insignia™ pacemaker operation;

f.    Designing, manufacturing and selling Insignia™ pacemakers that contained foreign material within the crystal timing component that interfered with the operation of the pacemaker or stopped the operation of the pacemaker;

g.    Failing to recall all Insignia™ pacemakers once Defendants learned that the Insignia™ pacemaker would prematurely fail;

h.    Failing to remove from inventory all Insignia™ pacemakers;

i.    Failing to design, manufacture and package the Insignia™ pacemakers in a safe and reasonable manner;

j.    Allowing the Insignia™ pacemaker to be installed in Dolores when defendants knew it experienced difficulty and possibly malfunctioned during interrogation prior to Dolores's surgery; and

k.    In negligently reprogramming Dolores's Insignia™ pacemaker by Bucher and/or his representative.

70.    Dolores suffered injuries as a result of the negligent design, manufacture, fabrication, packaging, supply, sale and reprogramming of the Insignia™ pacemaker.

71.    Defendants conducted an improper act by concealing from Dolores and the public their knowledge of the negligent design, manufacture, fabrication, packaging, supply and sale of the aforementioned Insignia™ pacemaker.

72.    As a proximate result of the negligence as set forth above, Dolores suffered personal injuries, experienced great pain and suffering, incurred medical expenses and died.

73.     As a result of the death of Dolores, Dolores's survivors have lost the services, companionship, comfort, care, love, guidance, counsel, support and have sustained a great pecuniary loss as a direct result of the death of Dolores.

74.     As a direct result of the injuries and death of Dolores, substantial medical expenses, funeral expenses and burial expenses were incurred.

75.     Defendants exhibited a complete indifference to or conscious disregard for the safety of others, including Dolores, by its negligent acts stated above and as a result, Defendants should be made to pay an additional amount as exemplary and punitive damages in a sum that will serve to punish Defendants and to deter Defendants and others from like conduct.

76.     Upon information and belief, Boston Scientific purchased Guidant and Guidant Sales, and is responsible for the liabilities of Guidant and/or Guidant Sales.

WHEREFORE, Plaintiffs pray for judgment against Defendants Guidant, Guidant Sales, Boston Scientific and Bucher for an award of such sums that will justly compensate Plaintiffs for the damages they sustained and will sustain in the future as a direct result of Dolores's death, including damages for aggravating circumstances and/or punitive damages, for the costs and expense of this action, and for such other and further relief as the Court deems just and proper.

## COUNT IV
### (NEGLIGENCE – FAILURE TO WARN AGAINST  GUIDANT, GUIDANT SALES, BOSTON SCIENTIFIC AND BUCHER)

77.     Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

78.     Defendants were negligent in the following ways:

      a.     Failure to warn Dolores and her physicians, Lisa Schiller, M.D. and Preben Bjerregaard, M.D., and its customer SLU Hospital that at the time

of Dolores's implantation of the Insignia™ pacemaker the pacemaker could prematurely fail;

b.     Failure to Dolores and her physicians, Lisa Schiller, M.D. and Preben Bjerregaard, M.D., and its customer SLU Hospital that Dolores should have the Insignia™ pacemaker examined and checked out if she experienced fatigue, shortness of breath, lightheadedness or syncope;

c.     Failure to provide a "Dear Doctor" letter to Dolores's physicians, Lisa Schiller, M.D. and Preben Bjerregaard, M.D., and its customer SLU Hospital;

d.     Failure to provide a "Dear Patient" letter to Dolores;

e.     Failure to warn Dolores and her physicians, Lisa Schiller, M.D. and Preben Bjerregaard, M.D., and its customer SLU Hospital that at the time of Dolores's implantation of the Insignia™ pacemaker there existed the same type of pacemaker that was not subject to failure;

f.     Failure to warn Dolores and her physicians, Lisa Schiller, M.D. and Preben Bjerregaard, M.D., and its customer SLU Hospital that the Insignia™ pacemaker implanted in Dolores could prematurely fail;

g.     Failing to warn that the Insignia™ pacemaker was subject to failure over time;

h.     Failing to warn that the Insignia™ pacemaker has intermittent or permanent loss of pacing output without warning;

i.     Failing to warn that the Insignia™ pacemaker had tendencies to revert to VVI mode or appearance of a reset warning message upon interrogation;

j.     Failing to warn that the Insignia™ pacemaker contained a crystal timing component that allowed certain conditions to cause the particle to relocate to a point where it interfered with the crystal timing component and effected or stopped the Insignia™ pacemaker operation;

k.     Failing to warn that the Insignia™ pacemaker contained foreign material within the crystal timing component that interfered with the operation of the pacemaker;

l.     Failing to recall all Insignia™ pacemakers once Defendants learned that the Insignia™ pacemaker would prematurely fail;

m.     Failing to provide a list of patients to Dolores's physicians, including Schiller and Bjerregaard who were potentially affected by the first and/or second failure mode of the Insignia™ pacemaker;

n.     Failing to notify Dolores's physicians, including Schiller and Bjerregaard that Dolores's Insignia™ pacemaker had been recalled and was potentially defective; and

o.     Failing to notify or warn Dolores and her physicians that the Insignia™ pacemaker installed in Dolores experienced difficulty and/or malfunctioned during interrogation prior to being implanted in Dolores.

79.    As a proximate result of the negligence as set forth above, Dolores suffered personal injuries, experienced great pain and suffering, incurred medical expenses and died.

80.    As a result of the death of Dolores, Dolores's survivors have lost the services, companionship, comfort, care, love, guidance, counsel, support and have sustained a great pecuniary loss as a direct result of the death of Dolores.

81.     As a direct result of the injuries and death of Dolores, substantial medical expenses, funeral expenses and burial expenses were incurred.

82.     Defendants conducted an improper act by concealing from Dolores and the public that they supplied her with an Insignia™ pacemaker that was manufactured in such fashion that it could fail, and by intentionally failing to warn of the defect.

83.     Defendants exhibited a complete indifference to or conscious disregard for the safety of others, including Dolores by failing to warn her and others that component parts of the Insignia™ pacemaker could fail prematurely.  As a result, Defendants should be made to pay an additional amount as exemplary and punitive damages in a sum that will serve to punish Defendants and to deter Defendants and others from like conduct.

84.     Upon information and belief, Boston Scientific purchased Guidant and Guidant Sales, and is responsible for the liabilities of Guidant and/or Guidant Sales.

WHEREFORE, Plaintiffs pray for judgment against Defendants Guidant, Guidant Sales, Boston Scientific and Bucher for an award of such sums that will justly compensate Plaintiffs for the damages they sustained and will sustain in the future as a direct result of Dolores's death, including damages for aggravating circumstances and/or punitive damages, for the costs and expense of this action, and for such other and further relief as the Court deems just and proper.

### COUNT V
### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST GUIDANT, GUIDANT SALES, BOSTON SCIENTIFIC AND BUCHER)

85.     Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

86.     Defendants impliedly warranted that the Insignia™ pacemaker and its component parts were merchantable and fit for the ordinary purposes for which a pacemaker is used.

87.     When Defendants sold or distributed the Insignia™ pacemaker that was inserted in Dolores, it was not fit for use as a pacemaker.

88.     The failure of the Insignia™ pacemaker occurred while it was being used in a manner in which it was intended to be used.

89.     Defendants conducted an improper act by concealing from Dolores that Defendants sold and distributed a Insignia™ pacemaker that they knew was not fit for use as a pacemaker.

90.     As a result of the breach of implied warranty of merchantability of the Defendants, Dolores suffered injuries and damages, including personal injury, additional medical treatment, pain and suffering, and death.

91.     As a result of the death of Dolores, Dolores's survivors have lost the services, companionship, comfort, care, love, guidance, counsel, support and have sustained a great pecuniary loss as a direct result of the death of Dolores.

92.     As a direct result of the injuries and death of Dolores, substantial medical expenses, funeral expenses and burial expenses were incurred.

93.     Upon information and belief, Boston Scientific purchased Guidant and Guidant Sales, and is responsible for the liabilities of Guidant and/or Guidant Sales.

WHEREFORE, Plaintiffs pray for judgment against Defendants Guidant, Guidant Sales, Boston Scientific and Bucher for an award of such sums that will justly compensate Plaintiffs for the damages they sustained and will sustain in the future as a direct result of Dolores's death, including damages for aggravating circumstances and/or punitive damages, for the costs and expense of this action, and for such other and further relief as the Court deems just and proper.

### COUNT VI
### (BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST GUIDANT, GUIDANT SALES, BOSTON SCIENTIFIC AND BUCHER)

94.     Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

95.     Defendants impliedly warranted that the aforementioned Insignia™ pacemaker was fit for the particular purpose of use as a pacemaker.

96.     Defendants knew the particular purpose for which the Insignia™ pacemaker was required.

97.     Dolores and her physicians relied upon Defendants' skill, expertise in the manufacture of pacemakers, and judgment to manufacture a suitable pacemaker.

98.     Defendants breached the implied warranty of fitness for a particular purpose under Uniform Commercial Code and Section 400.2-315, RSMo in providing a defective pacemaker that was implanted in Dolores's body.

99.     Defendants conducted an improper act by concealing from Dolores that Defendants had breached the implied warranty of fitness for a particular purpose under the Uniform Commercial Code and Section 400.2-315, RSMo in providing a defective pacemaker implanted in Dolores.

100.    As a result of the breach of implied warranty of Defendants, Dolores was caused to suffer damages as set forth herein, including personal injury, additional medical treatment, medical expenses and death.

101.    As a result of the death of Dolores, Dolores's survivors have lost the services, companionship, comfort, care, love, guidance, counsel, support and have sustained a great pecuniary loss as a direct result of the death of Dolores.

102.    As a direct result of the injuries and death of Dolores, substantial medical expenses, funeral expenses and burial expenses were incurred.

103.   Upon information and belief, Boston Scientific purchased Guidant and Guidant Sales, and is responsible for the liabilities of Guidant and/or Guidant Sales.

WHEREFORE, Plaintiffs pray for judgment against Defendants Guidant, Guidant Sales, Boston Scientific and Bucher for an award of such sums that will justly compensate Plaintiffs for the damages they sustained and will sustain in the future as a direct result of Dolores's death, including damages for aggravating circumstances and/or punitive damages, for the costs and expense of this action, and for such other and further relief as the Court deems just and proper.

### COUNT VII
### (MISSOURI CONSUMER PROTECTION ACT, RSMO. §407.010, *ET SEQ.* – GUIDANT, GUIDANT SALES, BOSTON SCIENTIFIC AND BUCHER)

104.   Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

105.   Defendants sold the Insignia™ pacemaker in violation of RSMo. § 407.020.1, which states:

> 407.020. 1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

106.   Dolores purchased the Insignia™ pacemaker for personal use.

107.   As a direct result of the violation of §407.020.1, Dolores suffered an ascertainable loss of money.

108.    Defendants conducted an improper act upon Dolores and the public in that Defendants exhibited an unlawful practice as considered under § 407.020.1 by concealing from Dolores and the public that Defendants knew a defective pacemaker was sold to Dolores for her use.

109.    The conduct of Defendants was in conscious disregard for the safety and rights of others, including Dolores.

110.    As a result of the death of Dolores, Dolores's survivors have lost the services, companionship, comfort, care, love, guidance, counsel, support and have sustained a great pecuniary loss as a direct result of the death of Dolores.

111.    As a direct result of the injuries and death of Dolores, substantial medical expenses, funeral expenses and burial expenses were incurred.

112.    Based on the conduct of Defendants, the Court should award an additional sum as exemplary and punitive damages.

113.    Upon information and belief, Boston Scientific purchased Guidant and Guidant Sales, and is responsible for the liabilities of Guidant and/or Guidant Sales.

114.    The Court should award an additional sum as attorney fees based on the amount of time reasonably expended as provided in RSMo § 402.025 that states:

> 402.025.  Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.  The court may, in its discretion, award punitive damages and may reward to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

WHEREFORE, Plaintiffs pray for judgment against Defendants in an amount that is fair and reasonable for all the injuries suffered, for an additional amount as exemplary and punitive damages and for costs and expenses incurred herein, for attorneys' fees and for such other relief as this Court deems proper.

### COUNT VIII
### (LOSS OF CONSORTIUM)

115.    Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

116.    James A. Nance was at all times mentioned herein and is currently the lawful husband of Dolores.

117.    As a direct and proximate result of the negligence of Defendants as set forth above, and of the injuries and damages suffered by his wife, James A. Nance suffered the loss of care, services, companionship, counsel, advice, assistance, comfort, and consortium of his wife, and has incurred expenses for the care and treatment of his wife, and provided extraordinary services in order to care for his wife, all to his loss and damage.

WHEREFORE, Plaintiff James A. Nance respectfully requests that this Court enter judgment in his favor against Defendants for such sums as are fair and reasonable to compensate him for his damages, punitive damages, costs and any other relief that the Court deems just and proper.

### DEMAND FOR JURY TRIAL

118.    Plaintiffs demand a jury trial.


## NASH & FRANCISKATO LAW FIRM

By: ____/s/ Brian S. Franciskato____          and
Brian S. Franciskato   MO #41634              Altom M. Maglio          FL Bar #88005
bfranciskato@nashfranciskato.com             *To Be Admitted Pro Hac Vice*
Dean Nash           MO #43907                 amm@sarasotalaw.com
deannash@nashfranciskato.com                  **MAGLIO CHRISTOPHER & TOALE**
Two Pershing Square                           **LAW FIRM**
2300 Main Street, Suite 170                   751 Mound Street, 2nd Floor
Kansas City, Missouri 64108                   Sarasota, FL 34236
(816) 221-6600                                (941) 952-5242
FAX:  (816) 221-6612                          FAX: (941) 952-5042

### ATTORNEYS FOR PLAINTIFFS

**Signature of this document certifies that a copy simultaneous service of the motion papers was made on the Panel Service List named below on the date and in the manner indicated:**

| Person Served | Party | Date | Method |
|---|---|---|---|
| Matthew D. Keenan<br>mkeenan@shb.com<br>Shook Hardy & Bacon<br>2555 Grand Boulevard<br>Kansas City, MO 64108<br>(816) 474-6550<br>FAX:  (816) 421-5547 | Defendants Boston Scientific Corporation, Guidant Corporation and Guidant Sales Corporation | Wednesday, August 11, 2010 | Electronically |